Filed 7/20/26  P. v. Lee CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B345026 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. XEAKA043577-01) |
| v. | |
| MIKE WEI-CHUNG LEE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jacqueline Lewis, Judge.  Affirmed.

Nancy Gaynor, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Colleen M. Tiedemann and Zachary John Crvarich, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

In 1999 a jury convicted Mike Wei-Chung Lee of attempted murder, assault with a semiautomatic firearm, mayhem, burglary, and conspiracy to commit burglary. In 2023 Lee filed a petition for resentencing under Penal Code section 1172.6.[1] The superior court ruled Lee failed to state a prima facie case for relief and denied the petition without issuing an order to show cause. Lee argues that, because the record of conviction does not foreclose the possibility the jury convicted him of attempted murder on a natural and probable consequences theory, the superior court erred in failing to issue an order to show cause and denying his petition. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *A Jury Convicts Lee of Attempted Murder and Other Crimes, and We Affirm*

In February 1999 Lee, Paolo Antonio Banaag, and four other men made a plan to steal a safe from a house while the owner was not home. Banaag drove Lee to the house. Lee and some of the other men broke a window and entered the house, while Banaag drove around the neighborhood looking for police and witnesses. Lee carried the safe to a car and put it in the trunk. Lee walked up the street looking for Banaag; the other men drove away. A neighbor who saw the men carrying what looked like a computer monitor called the police. As the neighbor stood in the street speaking with the dispatcher, another

---

[1] Statutory references are to the Penal Code.

neighbor, Gary Kisely, drove up.  The first neighbor told Kisely the house across the street had been burglarized, and Kisely drove off looking for the burglars.  Kisely spotted Lee and drove his truck on the sidewalk to block Lee's path.  Kisely jumped out of the truck, yelled "freeze, motherfucker," and told Lee to sit on the curb.  (*People v. Banaag* (May 22, 2001, B140320) [nonpub. opn.] (*Lee I*).)[2]

Banaag arrived and parked his car to block Kisely's truck. Banaag pointed his gun at Kisely and told him to freeze.  Lee ran to Banaag's car, and Kisely ran toward his truck.  Lee took the gun from Banaag, yelled "okay, motherfucker," and fired three shots at Kisely as he tried to climb in his truck.  Two of the bullets hit the truck.  One bullet entered the right side of Kisely's mouth, removed some of his teeth and part of his tongue, fractured his jaw, and exited the left side of his neck.  (*Lee I, supra*, B140320.)

A jury convicted Lee of attempted murder (§§ 187, subd. (a), 664), assault with a semiautomatic firearm (§ 245, subd. (b)), mayhem (§ 203), burglary (§ 459), and conspiracy to commit burglary (§ 182, subd. (a)(1)).  The jury found that, in committing attempted murder, assault with a semiautomatic firearm, and mayhem, Lee personally inflicted great bodily injury causing the victim to become comatose due to brain injury or to suffer

---

[2]     We rely on the factual summary from the opinion in Lee's direct appeal only to provide some factual background for this appeal, not to decide whether the superior court erred in denying Lee's petition.  (See *People v. Lopez* (2026) 19 Cal.5th 639, 649 fn. 2 [factual descriptions from a previous appellate opinion "do not constitute factual findings for purposes of the [section 1172.6] petition"].)

paralysis of a permanent nature, within the meaning of section 12022.7, subdivisions (a) and (b).  The jury also found that Lee personally used a firearm in committing assault with a semiautomatic firearm, within the meaning of section 12022.5, subdivisions (a) and (d), and that, on the attempted murder and mayhem convictions, Lee personally used and intentionally discharged a firearm causing great bodily injury or death, within the meaning of section 12022.53, subdivisions (b), (c), and (d).  Lee admitted he committed the offenses for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members, within the meaning of section 186.22, subdivision (b)(1).  The trial court found Lee had a prior serious or violent felony conviction, within the meaning of the three strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).

On Lee's conviction for attempted murder, the trial court sentenced Lee to a prison term of 18 years (the upper term of nine years, doubled under the three strikes law), plus 25 years to life for the firearm enhancement under section 12202.53, subdivision (d); on his burglary conviction, the court sentenced him to a prison term of two years eight months (one-third the middle term of four years, doubled under the three strikes law), plus three years for the gang enhancement, for an aggregate prison term of 48 years and eight months to life.  The court stayed execution of the sentences on the other convictions and enhancements.  We affirmed the judgment.  (*Lee I*, *supra*, B140320.)

4

B.     *The Superior Court Denies Lee's Petition for Resentencing Under Section 1172.6*

In February 2023 Lee filed a petition for resentencing under section 1172.6, checking boxes on a form petition stating he was eligible for relief.  The superior court appointed counsel, and the People filed a response.  The People submitted the jury instructions the trial court gave at Lee's trial, the jury's verdicts, and our opinion in *Lee I*.  The People argued Lee "was prosecuted and convicted as the actual perpetrator who committed this crime with actual malice."  Though Lee was prosecuted with a codefendant, the People argued, Lee was the only defendant "charged with and found guilty of personal gun use allegations."  Counsel for Lee did not submit a brief in support of the petition.

At the hearing neither counsel for Lee nor the prosecutor presented any argument.  The superior court denied Lee's petition without issuing an order to show cause.  The court ruled that, though the jury was instructed on the natural and probable consequences doctrine, that instruction applied only to Banaag, and not to Lee, and that "Lee was clearly prosecuted as the actual perpetrator."  The court stated that the jury found Lee "discharged a weapon causing great bodily injury" and that Banaag "was charged and found guilty only of the principal gun use allegation."  Because Lee "was the only principal in the crime that committed the attempted murder with malice aforethought," the court concluded, "no prima facie case has been met."  Lee timely appealed.

5

## DISCUSSION

A. *Applicable Law and Standard of Review*

Effective 2019, the Legislature substantially modified the law governing accomplice liability for murder by eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly narrowing the felony-murder exception to the malice requirement for murder. (*People v. Oyler* (2025) 17 Cal.5th 756, 835; *People v. Patton* (2025) 17 Cal.5th 549, 558 (*Patton*); *People v. Arellano* (2024) 16 Cal.5th 457, 467-468; see *People v. Strong* (2022) 13 Cal.5th 698, 707-708 [felony murder]; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843 [natural and probable consequences doctrine].) Section 188, subdivision (a)(3), now prohibits imputing malice based solely on a person's participation in a crime and requires proof of malice to convict a defendant of murder, except under the revised felony-murder rule. (§§ 188, subd. (a)(3), 189, subd. (e); *Patton*, at p. 558; *Arellano*, at pp. 467-468.) Effective 2022, the Legislature amended section 1172.6 to apply to persons convicted of "attempted murder under the natural and probable consequences doctrine." (§ 1172.6, subd. (a); see *People v. Delgadillo* (2022) 14 Cal.5th 216, 223, fn. 3; *People v. Rodriguez* (2024) 103 Cal.App.5th 451, 457.)

Section 1172.6 authorizes a person convicted of felony murder, murder under the natural and probable consequences doctrine, or attempted murder under the natural and probable consequences doctrine, to petition the superior court to vacate the conviction and resentence the defendant on any remaining counts if he or she could not now be convicted of murder or attempted murder because of the legislative changes to the definitions of

6

murder.  (*People v. Oyler*, *supra*, 17 Cal.5th at p. 835; *People v. Arellano*, *supra*, 16 Cal.5th at pp. 468-469.)  If a section 1172.6 petition contains all the required information, the court must appoint counsel to represent the petitioner if requested. (§ 1172.6, subd. (b)(1)(A), (b)(3); *Patton*, *supra*, 17 Cal.5th at pp. 558-559; *People v. Lewis* (2021) 11 Cal.5th 952, 962-963.)  The People must file a response to the petition, the petitioner may file a reply, and the court must hold a hearing to determine whether the petitioner has made a prima facie showing he or she is entitled to relief.  (§ 1172.6, subd. (c); *People v. Antonelli* (2025) 17 Cal.5th 719, 724.)

In deciding whether the petitioner has made a prima facie showing for relief under section 1172.6, "'"'the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if [those] factual allegations were proved.  If so, the court must issue an order to show cause.'"'"  (*Patton*, *supra*, 17 Cal.5th at p. 563; see *People v. Lewis*, *supra*, 11 Cal.5th at p. 971.)  The court also "looks beyond the face of the petition" and may consider the record of conviction, which will "necessarily inform the trial court's prima facie inquiry . . . , allowing the court to distinguish petitions with potential merit from those that are clearly meritless."  (*Patton*, at p. 563; see *Lewis*, at p. 971.)  In "'reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in "factfinding involving the weighing of evidence or the exercise of discretion."'"  (*Patton*, at p. 563; see *Lewis*, at p. 972.)  "'If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.  [Citations.]  If, instead, the defendant has made a

7

prima facie showing of entitlement to relief, "the court shall issue an order to show cause."'" (*People v. Arellano, supra,* 16 Cal.5th at p. 469.) We independently review an order denying a petition under section 1172.6 at the prima facie review stage. (*People v. Nino* (2025) 111 Cal.App.5th 844, 853; *People v. Jackson* (2025) 110 Cal.App.5th 128, 145, review granted June 11, 2025, S290577.)

B.    *The Superior Court Did Not Err in Denying Lee's Petition Under Section 1172.6*

A defendant convicted of attempted murder is eligible for relief under section 1172.6 only if he or she was convicted "under the natural and probable consequences doctrine." (§ 1172.6, subd. (a); see *People v. Anaya* (2025) 117 Cal.App.5th 615, 619 [section 1172.6 applies to "defendants convicted of attempted murder . . . only if their convictions were 'based on the natural and probable consequences doctrine'"]; *People v. Rodriguez, supra,* 103 Cal.App.5th at p. 457 [same].) Where the record of conviction establishes a defendant convicted of attempted murder was the actual perpetrator, the defendant is ineligible for relief under section 1172.6 as a matter of law. (*People v. Muhammad* (2024) 107 Cal.App.5th 268, 282; see *Anaya,* at p. 621 [superior court did not err in denying a petition at the prima facie stage where the defendant "was convicted of attempted murder as the direct perpetrator who acted with intent to kill"].)

Lee is ineligible for relief because the record of conviction, which includes the jury instructions and verdicts, shows the jury did not convict him of attempted murder under the natural and probable consequences doctrine. (See *People v. Antonelli, supra,* 17 Cal.5th at p. 731 [in "assessing section 1172.6 petitions from

8

individuals convicted following jury trials, the jury instructions will be critical"]; *People v. Curiel* (2023) 15 Cal.5th 433, 465 ["we may look to the jury's verdicts, and the factual findings they necessarily reflect, to determine whether the record of conviction refutes the factual allegations in [the defendant's] petition"]; *People v. Nguyen* (2024) 103 Cal.App.5th 668, 677 ["In making the prima facie determination, the court may rely on the record of conviction, including the jury instructions and verdict forms."].)

The trial court instructed the jury with CALJIC No. 8.66 that the People had to prove two elements to convict Lee of attempted murder: (1) a "direct but ineffectual act was done by one person towards killing another human being" and (2) the "person committing the act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being." Though the trial court also instructed the jury on the natural and probable consequences doctrine with a modified version of CALJIC No. 3.02 (1997 rev.), the instruction referred to Banaag, not Lee.

In addition, the instructions and verdict forms for the firearm enhancement under section 12022.53 show the jury found Lee, not Banaag, was the shooter. The prosecutor alleged Lee personally and intentionally discharged a firearm causing great bodily injury or death under section 12022.53, subdivision (d), but with respect to Banaag, alleged only that a principal personally and intentionally discharged a firearm causing great bodily injury or death under section 12022.53, subdivision (e)(1). In finding these allegations true and convicting Lee and Banaag of attempted murder, the jury found that Lee committed attempted murder by taking the direct but ineffectual act of shooting Kisely with the intent to kill and that Banaag aided and abetted Lee in

9

that crime, either as a direct aider and abettor or under the natural and probable consequences doctrine.

Lee concedes that the "record of conviction shows that [he] shot and wounded the victim of the attempted murder, and that the prosecutor proceeded on the theory that he did so with intent to kill." He argues, however, the instructions on conspiracy to commit burglary allowed the jury to convict him of attempted murder without finding he intended to kill. It's a creative argument, but it falls just short.

The trial court instructed the jury a conspiracy was "an agreement entered into between two or more persons with the specific intent to agree to commit the crime of burglary and followed by an overt act . . . by one or more of the parties for the purpose of accomplishing the object of the agreement." The court described six overt acts allegedly committed by Lee, Banaag, and the four other men. The court also instructed the jury on conspiracy with CALJIC No. 6.11, "Conspiracy—Joint Responsibility," as follows: "A member of a conspiracy is not only guilty of the particular crime that to his knowledge his confederates agreed to and did commit, but is also liable for the *natural and probable consequences of any crime of a co-conspirator to further the object of the conspiracy*, even though that crime was not intended as a part of the agreed upon objective and even though he was not present at the time of the commission of that crime act. [¶] You must determine whether the defendant is guilty as a member of a conspiracy to commit the originally agreed upon crime or crimes, and, if so, whether the crime alleged in [count] 1, attempted murder, count 2, assault with a semi-automatic firearm, and [count] 3, mayhem was perpetrated by a co-conspirator in furtherance of that conspiracy

10

and was a *natural and probable consequence of the agreed upon criminal objective of that conspiracy*." (Italics added.)

Lee argues that, under these instructions, once the jurors decided Lee was guilty of conspiracy to commit burglary, "the only additional finding necessary for his conviction of attempted murder was that any of the coconspirators committed the attempted murder as a natural and probable consequence of the burglary." Lee contends that, even if one or more jurors had reasonable doubt whether Lee intended to kill, they could have found Banaag or one of the other four coconspirators "did intend to kill and took a direct step toward attempted murder by handing the gun to [Lee] or committing some other act as a direct step to accomplish the desired result." Thus, Lee concludes, the jury could have convicted him, via the instructions on conspiracy to commit burglary, of attempted murder on a natural and probable consequences theory.[3]

It is true, as Lee suggests, the natural and probable consequences portion of the conspiracy instruction can be "problematic . . . where a defendant is convicted of murder or attempted murder based on a conspiracy to commit 'a lesser crime that resulted in murder.'" (*People v. Lovejoy* (2024) 101 Cal.App.5th 860, 867.)[4] The jury instructions and verdicts in

---

[3]     The People do not respond to this argument.

[4]     In 2019 CALJIC No. 6.11 was revised to state a member of a conspiracy is "liable for the natural and probable consequences of any [crime] [act] [*other than murder*] of a co-conspirator to further the object of the conspiracy." (Spring 2019 rev., italics added.) The current version of CALCRIM No. 417 includes the following bracketed portion, to be given in cases where the

11

this case, however, show the jury did not rely on the natural and probable consequences doctrine to find Lee guilty of attempted murder. The jury instruction on conspiracy described six alleged overt acts in furtherance of the conspiracy to commit burglary: (1) "defendants Mike Lee, Antonio Banaag and Dennis Tsui[5] met at a restaurant in Monterey Park to plan the burglary of Susanna Leung's house"; (2) "Mike Lee, Antonio Banaag and Dennis Tsui met with Jason Kang and Jason Cheung and Richard Chen at the Puente Hills mall"; (3) "defendant Mike Lee, Antonio Banaag and Dennis Tsui went to the home of Susanna Leung in two separate cars one driven by Banaag the other by Tsui"; (4) "Mike Lee along with Jason Kang and Jason Cheung entered the home of Susanna Leung and took a portable safe"; (5) "Antonio Banaag gave defendant Mike Lee a gun, with which defendant Mike Lee shot Gary Kisely"; and (6) "Dennis Tsui transported the safe away from the home of Susanna Leung."[6]

Neither the jury instruction on overt acts nor anything else in the record of conviction suggested Tsui, Kang, Cheung, or Chen was a direct perpetrator of the attempted murder of Kisely.

---

defendant is charged with murder or attempted murder: "[A member of a conspiracy cannot be held criminally responsible for (murder/[ or] attempted murder) solely because the (murder/ [or] attempted murder) was the natural and probable consequence of the conspiracy.]"

[5] The People charged Lee, Banaag, and Tsui in the information, but did not try Tsui with Lee and Banaag.

[6] CALJIC No. 6.10 required the jury to find one or more of the conspirators committed "at least one" of the alleged overt acts.

That left only Lee and Banaag, and as discussed, Lee does not dispute the People prosecuted him as the shooter and Banaag as the aider and abettor. Indeed, the jury instructions did not give the jury an option to convict Banaag as a direct perpetrator of attempted murder. The trial court instructed the jury that it could convict Banaag of attempted murder, assault with a semiautomatic firearm, and mayhem only as an aider and abettor, under one of two theories: (1) as a direct aider and abettor of attempted murder, assault with a semiautomatic firearm, and mayhem; or (2) under the natural and probable consequences doctrine, if Banaag aided and abetted the target offense of burglary or conspiracy to commit burglary, and a coprincipal in one of the target offenses committed attempted murder, assault with a semiautomatic firearm, or mayhem, which was a natural and probable consequence of the commission of a target offense. Because the jury found Banaag guilty of attempted murder, it necessarily found Banaag was an aider and abettor. Therefore, the jury had to find someone other than Banaag was the direct perpetrator. That could only have been Lee. By finding Lee guilty as a direct perpetrator, the jury found that he took a direct but ineffectual act toward killing Kisely and that he intended to kill. (See *People v. Chhuon and Pan* (June 1, 2026, S105403) ___ Cal.5th ___, ___ [2026 WL 1530451, p. 63] [""Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.""]; *People v. Morales* (2024) 102 Cal.App.5th 1120, 1132 ["the jury's finding that an attempted murder was committed means the jury must have found, as a factual matter, that one of the robbers, with intent to kill, took a direct but ineffectual act toward killing" the victim].)

Lee contends "the prosecutor's charging decisions, here his decision to target only [Lee] as the direct perpetrator and, for that matter, to leave the other four alleged coconspirators out of the trial entirely, does not mean that the jurors agreed with his theory of who among the six was primarily responsible for the attempted murder." The case Lee cites, *People v. Estrada* (2024) 101 Cal.App.5th 328, however, does not support his contention. In *Estrada* the defendant pleaded no contest to attempted murder and voluntary manslaughter. (*Id.* at p. 334.) The People in *Estrada* argued the superior court did not err in denying the defendant's petition under section 1172.6 at the prima facie stage because the information established the defendant was the sole perpetrator. (*Estrada*, at p. 339.) The court in *Estrada* disagreed, stating that, though the defendant was charged alone, "a charging decision does not establish any facts as a matter of law," and "the information did not foreclose the prosecution from presenting imputed malice before a jury regardless of whether it charged others." (*Ibid.*) Here, unlike in *Estrada*, the record of conviction includes not only the information, but also the jury instructions and verdict form that show, as discussed, the jury found Banaag guilty of attempted murder as an aider and abettor and found Lee shot Kisely.

Lee also argues the jury's true finding on the firearm enhancement does not show he intended to kill. Lee is correct that section 12022.53, subdivision (d), "provides the defendant must have intended to discharge a firearm," but "does not require the prosecution to prove that the defendant harbored a particular mental state as to the victim's injury or death." (*People v. Offley* (2020) 48 Cal.App.5th 588, 598.) The jury's true finding on the allegation under section 12022.53, subdivision (d), however,

14

established that Lee, not Banaag, shot Kisely. (See *People v. Morales*, *supra*, 102 Cal.App.5th at pp. 1133-1134 ["the relevance of the section 12022.53[, subdivision] (d) firearm discharge finding in this case is not to prove the requisite mental state but to establish that the jury found [the defendant] was the shooter and, therefore, was the direct perpetrator of the attempted premeditated murder"].) The jury's finding Banaag aided and abetted Lee in committing attempted murder, as discussed, showed the jury found Lee intended to kill.

Lee argues the superior court had to hold an evidentiary hearing to determine whether Lee was the sole shooter and "what his intent was in firing his weapon." Lee, however, submitted a form petition and did not allege any specific facts identifying a second shooter or explaining how Banaag or another coconspirator could have been the direct perpetrator of the attempted murder. As the Supreme Court stated in *Patton*, *supra*, 17 Cal.5th 549, "petitioners confronting a record of conviction that demonstrates relief is unavailable have the burden of coming forward with nonconclusory allegations to alert the prosecution and the court to what issues an evidentiary hearing would entail." (*Id.* at p. 567.) "A dispute regarding the basis of a conviction might arise if, for instance, a petitioner points to specific facts that identify someone else as the direct perpetrator. . . . But absent specific facts, no such dispute arises . . . from mere latent, speculative possibilities; that is, a hypothetical alternate direct perpetrator cannot be conjured from thin air or a legal conclusion." (*Ibid.*)

In the superior court Lee could have presented specific facts showing he was eligible for relief in his petition, in a "substitute petition for resentencing after appointment of

15

counsel" (*Patton*, *supra*, 17 Cal.5th at p. 568), in a reply brief, or at the hearing.  (See § 1172.6, subd. (c) [petitioner may file a reply to the prosecutor's response, and the court must hold a hearing after the parties submit briefs].)  But Lee did not submit a reply brief, and his counsel did not present any argument at the hearing.  (See *Patton*, at p. 569 [defendant's "petition contains only a checkbox declaration with legal conclusions, he submitted no reply, and he made no argument when invited to do so at the prima facie hearing"]; cf. *People v. Offley*, *supra*, 48 Cal.App.5th at p. 594 [defendant submitted a declaration with his section 1172.6 petition claiming he did not kill the victim and citing "portions of the trial transcript in his case in which the prosecutor agreed that a bullet from [the defendant's] gun could not have killed" the victim].)

## DISPOSITION

The order is affirmed.

SEGAL, J.

We concur:

MARTINEZ, P. J.

STONE, J.

16